The Honorable Jimmie Don McKissack State Representative P O Box 599 Star City, AR 71667
Dear Representative McKissack:
This is in response to your opinion request concerning a recent ruling of the Arkansas Supreme Court. While you did not identify the specific Supreme Court ruling, you have stated that you believe the ruling does not require a school district to make underpayments to teachers if the underpayment would create a deficit situation in a current school year. Specifically, the questions you have posed are as follows:
 1. Does a deficit balance exempt the district from legal obligations of teacher underpayment?
 2. Can the Grady School District reduce teacher salaries for the current school year to keep from experiencing a deficit balance?
The situation giving rise to your questions involves the Grady School District which has experienced revenue shortages in recent years compounded by teacher underpayments which are coming due. A teacher underpayment results when auditors determine that teacher salaries for a given year did not meet the requirements of A.C.A.6-20-319(4) which requires that seventy percent (70%) of net current revenues and fifty-six (56%) of increases in net current revenue be devoted to salaries of certified personnel. Subsection (1) of A.C.A. 6-20-319, however, prohibits a school district's expenditures from exceeding revenues in a given year.
Our research indicates that the only recent Arkansas Supreme Court ruling that is remotely connected to the questions you have posed is Calico Rock School District #50 v. Speak, 293 Ark. 206,736 S.W.2d 10 (1987). This case addressed the right of a school district to terminate the employment contract of a custodian to preserve its financial stability. The facts in the Speak case, however, are distinguishable from the questions you have posed. Speak was a custodial employee of the Calico Rock School District employed by written contract for the entire school year. During the year in question, the superintendent became concerned that a deficit situation was going to result and requested and received permission from the School Board to terminate Speak's contract. The only reason for terminating the contract was to save the school district money and avoid a possible deficit situation. The facts established that no deficit resulted and would not have even if Speak had not been terminated. The School District argued that A.C.A. 6-13-620(11)(A) authorized the termination of Speak's contract, to-wit:
 If in any school district it should be apparent that the school cannot be operated for the remainder of the school year without incurring more indebtedness than that represented by outstanding bonds, and those that may be issued for buildings, and equipment for the school buildings, purchasing sites, and repairing school buildings, or the improvement of sites, it shall be the duty of the school directors to close the school and cease paying the teachers for the remainder of that fiscal year, and each contract made with the teachers shall be subject to that contingency, and the district shall not be liable for teachers(') salaries for the time the school is so closed.
The Arkansas Supreme Court determined that the above statute did not apply to custodial personnel and that since the school district had voluntarily entered into a contract with a noninstructional employee, it was obligated to honor the contract. The majority's statement that "an employment contract between teachers and school districts may be terminated in the event the district is unable to meet its financial obligations" is dicta and the Speak case should not be relied upon for that proposition. Nonetheless, we will attempt to reach the merits of the questions you have posed.
Relevant to your inquiries are the statutory provisions referred to above, A.C.A. 6-20-319 subsections (1) and (4), which provide in pertinent part as follows:
 In order for a district to be entitled to state aid under the provisions of this subchapter, each district shall satisfy the following requirements:
 (1) Expenditures for any fiscal year shall not exceed the legal revenues for that year;
* * *
 (4) Each district in the state shall pay its certified personnel an amount equal to at least seventy percent (70%) of its net current revenue. Not less than eighty percent (80%) of seventy percent (70%) of each school district's increase in net current revenue over the net current revenue received the previous school year less the total salary expenditure required to fund additional certified personnel added to the staff of the district in the school year shall be divided equally among the certified personnel positions existing in the district in that year unless the board of directors of the district and a majority of the teachers agree to a different distribution.
The only exception to the percentage salary requirements referred to in A.C.A. 6-20-319(4) is found at 6-20-307(d) which allows a school district to apply to the State Board of Education if compliance will cause any district to have less than a full term of school. The regulations adopted by the State Board thereunder, however, limit the revenue shortfall to extraordinary one-time circumstances apparently not applicable to the Grady situation.
Hence, it is the opinion of this office that the Grady School District must fulfill its underpayment obligations since the law mandates the amount of net current revenue which must go to teacher salaries. Further, the school district cannot allow expenditures to exceed legal revenues. Thus, if once having made the underpayment, the district realizes it is going to be in a deficit situation, the district should then rely on A.C.A.6-13-620(11)(A) and cease paying teachers for the remainder of that fiscal year. This Code section also demands closure of the school in that situation.